**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 8 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARJORIE E. WIEDERHOLT,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

Defendant-Appellee.

No.  03-3251
(D.C. No. 02-CV-2313-GTV)
(D. Kan.)

---

**ORDER AND JUDGMENT**  *

---

Before **HENRY** , **MURPHY** , and **TYMKOVICH** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Marjorie Wiederholt appeals from an order affirming the Commissioner's decision that she is not entitled to social security disability insurance and supplemental security income benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we affirm in part and reverse and remand in part.

## Background

Mrs. Wiederholt was diagnosed with carpal tunnel syndrome in her right wrist in 1997. In March 1998, she underwent carpal tunnel release surgery, and her condition improved somewhat. But as Mrs. Wiederholt continued to suffer pain in her right arm, shoulder, and neck, it became apparent that she could not return to her job, and her employment was terminated. Through her former employer, in 1998 and 1999 she received disability insurance and worker's compensation payments in connection with her physical ailments, and she continued to seek medical treatment for her pain. During the summer of 1998, she also was diagnosed with fibromyalgia.

In February 2000, Mrs. Wiederholt applied for social security disability insurance and supplemental security income benefits, alleging that she was disabled because of pain in her hand and shoulder. After her claim was denied, Mrs. Wiederholt requested a hearing before an administrative law judge (ALJ). The hearing was scheduled for August 22, 2001. In a pre-hearing brief filed

about a week before the hearing, Mrs. Wiederholt's counsel identified her impairments as carpal tunnel syndrome, degenerative disc disease, and fibromyalgia. Aplt. App. at 173. In this brief, counsel also suggested, apparently for the first time in the proceedings, that Mrs. Wiederholt was suffering from depression and/or anxiety. *Id.* at 177-78. The ALJ heard testimony about Mrs. Wiederholt's memory problems at the hearing. *Id.* at 427, 455-57. At the end of the hearing, he ordered a consultative examination by a psychologist. *Id*. at 458-59.

On September 25, 2001, Mrs. Wiederholt was examined by licensed psychologist David R. Mouille, Ph.D., who opined that she was suffering from severe depression. *Id*. at 352, 354. He noted that her ability to remember and recall information was "significantly reduced," but he concluded that this impairment was likely the result of her depression. *Id.* at 350-51. Dr. Mouille also noted significant reductions in Mrs. Wiederholt's abilities to form judgments, make decisions, understand the world around her, and solve problems, and he noted reductions to her abilities to attend and concentrate. *Id.* at 351. While he measured her intellectual abilities "in the borderline to extremely low level of functioning," he noted that her scores on the relevant tests were not consistent with her reported employment and earnings history, and he opined that her depression had affected her intellectual functioning. *Id.* at 351, 354. Dr. Mouille

stated that Mrs. Wiederholt was not currently able to manage her own funds, but he expected her to be able to manage them in the future because her "[d]epression [was] expected to ameliorate within one year." *Id.* at 352, 358.

On January 8, 2002, with the initial ALJ having since left the agency, a second ALJ reconvened the hearing. After hearing Mrs. Wiederholt's evidence and considering the consultative examinations ordered by the initial ALJ, the second ALJ determined that, although Mrs. Wiederholt had some severe impairments, they were not so severe as to meet or medically equal a listed impairment. Most relevant to this appeal, the ALJ concluded that the record did not support the severity of the depression described by Dr. Mouille, and that, in any event, Mrs. Wiederholt's depression did not qualify as a disability because it was not expected to last at a disabling level for at least twelve months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 1525(a); *id.* §§ 416.905(a), 416.925(a); *Barnhart v. Walton*, 535 U.S. 212, 218-20 (2002). After consulting a vocational expert (VE), the ALJ concluded that Mrs. Wiederholt had the residual functional capacity to work in positions available in the national economy, and he declared that she was not entitled to benefits.

The Appeals Council denied review, so the ALJ's decision became the Commissioner's final decision. *Doyal v. Barnhart*, 331 F.3d 758, 759

(10th Cir. 2003). The district court affirmed the Commissioner's ruling. Mrs. Wiederholt appeals.

## Discussion

### Standard of Review

"We review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). "In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

### Analysis

Mrs. Wiederholt has not appealed the determination that her physical impairments do not qualify her for benefits. Rather, she focuses her appeal on the ALJ's determination that her mental impairments were not disabling, arguing that (1) the ALJ erred in not establishing an onset date for her depression, and (2) he improperly asked the VE a hypothetical question that did not adequately express her mental limitations.

## I.

Mrs. Wiederholt contends that her mental impairments were severe enough to meet Listing § 12.04, and that the ALJ could not properly conclude that she had not met the twelve-month durational requirement without determining an onset date for her depression. She also contends that, by not establishing an onset date, the ALJ failed to fulfill his duty to develop the record.

Mrs. Wiederholt argues that the record evidence shows that "she had been depressed for years prior to September 2001." Aplt. Br. at 18. The relevant question, however, is not whether she was *suffering* from depression, but whether her depression was *disabling* for the requisite twelve-month period. *Walton*, 535 U.S. at 217-22; *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990) (per curiam); *Flint v. Sullivan*, 951 F.2d 264, 267-68 (10th Cir. 1991). A retrospective diagnosis of a disease or condition, without evidence of actual disability, is insufficient for an award of benefits. *Potter*, 905 F.2d at 1349; *Flint*, 951 F.2d at 267.

Factors relevant to determining an onset date include the claimant's allegations of an onset date and the claimant's work history, but "[t]he medical evidence serves as the primary element in the onset determination." Soc. Sec. Rul. 83-20, 1983 WL 31249, at *2 (1983). While it may be necessary for an ALJ to call a medical advisor at the hearing to infer an onset date, "a medical advisor

-6-

need be called only if the medical evidence of onset is ambiguous." *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995). "[T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." Soc. Sec. Rul. 83-20, 1983 WL 31249, at *3. Here, any inferred onset date earlier than the date of Dr. Mouille's diagnosis would be inconsistent with the medical record.

Of the approximately twelve doctor's visits Mrs. Wiederholt made from late 1999 until the August 2001 hearing, only one doctor's report contains even a hint of a concern about a mental condition–a diagnosis of memory loss. [1] Aplt. App. at 204, 332. This is a far cry from a diagnosis of depression or an indication that Mrs. Wiederholt was disabled due to a mental impairment. Mrs. Wiederholt contends that her doctor's prescription of the anti-depressant Amitriptyline shows that he considered her depressed, but the medical evidence of record contradicts this inference. A report filled out by the doctor's nurse practitioner on or about November 30, 2000, indicates that the medication was prescribed for neuropathy (which is consistent with Mrs. Wiederholt's ongoing treatments for pain), and it

---

[1] At the initial hearing, Mrs. Wiederholt's attorney stated, "Judge, there has been notes in the file that they had recommended a possible evaluation due to the depression and the anxiety, but nothing has been done in that." Aplt. App. at 413. Later, the initial ALJ indicated that at some point, Mrs. Wiederholt had been advised to seek psychiatric assistance or counseling. *Id.* at 454. But our review of the record does not reveal, and Mrs. Wiederholt's counsel has not identified, either the notes referred to or any other evidence supporting these comments.

-7-

says nothing about depression. *Id.* at 204. Mrs. Wiederholt herself testified at the initial hearing, prior to seeing Dr. Mouille, that she was prescribed Amitriptyline for pain. *Id.* at 449.

In addition, when Mrs. Wiederholt applied for benefits in February 2000, she indicated she had pain in her hand and shoulders; she said nothing about mental limitations. *Id*. at 95-104. In a March 1, 2000, Social Security field report, the reporter observed no difficulty in her coherency or concentrating. *Id.* at 93. In her requests for reconsideration in the summer of 2000, Mrs. Wiederholt asserted that she could not work because of her pain, but again, she mentioned no mental impairments. *Id.* at 41, 43. Consistently, self-reports completed by Mrs. Wiederholt in early and mid-2000 also indicated that, while her activities were somewhat limited, she did light housework and some cooking and shopping, she left home without assistance, she visited with friends at her home, and she watched TV and listened to the radio. *Id.* at 105-09, 132-36.

Therefore, the medical evidence in this case regarding the onset of Mrs. Wiederholt's depression is not ambiguous; it is practically nonexistent. Prior to the August 2001 pre-hearing brief and hearing, the record contains little to no discussion about depression or concerns about Mrs. Wiederholt being

depressed, much less evidence showing she suffered from *disabling* depression. [2]

Given these circumstances, the ALJ did not err in not calling a medical advisor to determine an onset date. *Reid*, 71 F.3d at 374. Moreover, Dr. Mouille opined that Mrs. Wiederholt's low test scores were due to her depression, and within one year, her depression would ameliorate sufficiently to allow her to manage her own funds. In light of this record, there is substantial evidence to support the ALJ's decision that Mrs. Wiederholt's mental impairments did not meet Listing § 12.04.

Mrs. Wiederholt further contends that, because he did not establish an onset date, the ALJ failed to fulfill his duty to develop an adequate record. While the ALJ does have a basic obligation to develop an adequate record, even where the claimant is represented by counsel, *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993), such duty is limited to "fully

---

[2] Mrs. Wiederholt relies heavily on her own testimony and that of her husband to support her allegations of disabling depression for some time prior to September 2001. Aplt. Br. at 18-19. But the ALJ found both Mr. and Mrs. Wiederholt not to be credible witnesses, Aplt. App. at 21-22, 24, and, as Mrs. Wiederholt acknowledges, she did not appeal the ALJ's credibility finding to the district court. Aplt. Br. at 21; Aplt. App. at 467. Nonetheless, on appeal she argues that the testimony supports her position, because despite the general finding of non-credibility, the ALJ did not discredit the specific instances about which she and her husband testified. Aplt. Br. at 21. We decline to consider this back-door attempt to challenge the ALJ's credibility findings, when credibility was not raised in the district court. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court.").

and fairly developing the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quotation and brackets omitted).

Here, the ALJ fulfilled his duty: the record contains copious medical records and other contemporaneous evidence of Mrs. Wiederholt's condition, as well as information from the two hearings. As discussed above, given the state of the record, any attempt to make a retrospective diagnosis of disabling depression would be speculative and unsupported. Further, Mrs. Wiederholt's counsel did not seek to supplement the record or otherwise alert the ALJ that the record might be considered insufficient. *See id.* at 1167 ("[T]he ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.").

**II**.

Mrs. Wiederholt also argues that the ALJ asked the VE a hypothetical question that did not adequately take account of Mrs. Wiederholt's severe mental restrictions. We agree that the challenged question was flawed, and that it was improper for the ALJ to rely on the VE's response to that question.

In determining Mrs. Wiederholt's residual functional capacity (RFC), the ALJ found that, mentally, claimant was "limited to simple, unskilled job tasks." Aplt. App. at 22. But the ALJ further found that claimant had "mild restrictions in activities of daily living, mild difficulties in maintaining social functioning,

[and] moderate difficulties in maintaining concentration, persistence, or pace." *Id.* When describing Mrs. Wiederholt's capabilities to the VE, however, he included only the limitation of "simple, unskilled" tasks mentally. *Id.* at 404. The VE responded that, with that RFC, Mrs. Wiederholt could do unskilled light or sedentary work. *Id.* at 404-05. The ALJ relied on this answer in denying benefits to Mrs. Wiederholt. *Id.* at 23-24.

Mrs. Wiederholt's mental impairments, even though not qualifying as disabling impairments in and of themselves, were properly considered in conjunction with her physical impairments in determining her RFC. *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5 (1996). Hypothetical questions should be crafted carefully to reflect a claimant's RFC, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted); *see also Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record").

The relatively broad, unspecified nature of the description "simple" and "unskilled" does not adequately incorporate the ALJ's additional, more specific findings regarding Mrs. Wiederholt's mental impairments. Because the ALJ

omitted, without explanation, impairments that he found to exist, such as moderate difficulties maintaining concentration, persistence, or pace, the resulting hypothetical question was flawed. Moreover, there is no evidence to suggest that the VE heard testimony or other evidence allowing her to make an individualized assessment that incorporated the ALJ's specific additional findings about Mrs. Wiederholt's mental impairments. *Cf. Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). The VE's opinion that Mrs. Wiederholt could do unskilled light or unskilled sedentary work is therefore not substantial evidence to support the ALJ's decision.

The omission of the ALJ's more specific findings is particularly significant given that, when the ALJ posed a hypothetical question incorporating all of the limitations found by Dr. Mouille, the VE opined that Mrs. Wiederholt would be precluded from all work activity. Aplt. App. at 406. Thus, when looking at Mrs. Wiederholt's capabilities given her mental impairments, at one end of the spectrum, the VE concluded that Mrs. Wiederholt could perform unskilled light or sedentary work, and at the other end, she indicated there was no work that Mrs. Wiederholt could perform. *Id.* at 404-05, 406. Given *all* of the ALJ's findings, though, the situation here was neither at one extreme nor the other. The SSA, on remand, should obtain vocational testimony that considers all of the ALJ's

-12-

findings regarding Mrs. Wiederholt's limitations in order to determine where along the spectrum Mrs. Wiederholt properly should be placed.

The judgment of the district court is affirmed in part, and reversed in part and remanded for further proceedings.

Entered for the Court


Michael R. Murphy
Circuit Judge