Maxine **BARTON**

v.

Michael J. **ASTRUE, Commissioner of Social Security.**

No. PWG–06–790.

United States District Court,
D. Maryland.

July 18, 2007.

Anthony R. Mignini, Mignini & Raab, Bel Air, MD, for Barton.

Allen F. Loucks, AUSA, Baltimore, MD, for Astrue.

GRIMM, Chief United States Magistrate Judge.

Dear Counsel:

Pending before the undersigned, by the parties' consent, are Cross–Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Barton's claim for Disability Insurance Benefits ("DIB"). (Paper Nos. 5, 12, 21). The Commissioner filed a Motion to consolidate this case with another case, *Juanita Waters v. Astrue, PWG–06–101,* and a Motion for *En Banc* Consideration of both cases. (Paper Nos. 22 & 23). The Plaintiff's counsel in this case filed Responses Objecting to all of the Defendant's Motions. (Paper Nos. 32, 33, 34). Counsel for Plaintiff in *Juanita Waters v. Astrue,* Stephen F. Shea, also objected to the Defendant's request that this case be consolidated and considered *en banc. (PWG–06–101,* Paper No. 24). I do not find that consolidation and/or *en banc* consideration is necessary or appropriate. The two cases are different factually and procedurally, and counsel have raised different allegations of error in their respective cases. Therefore, the Commissioner's Motion for Consideration *En Banc* (Paper No. 22) and the Motion to Consolidate (Paper No. 23) are both DENIED.

This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir.1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion for Summary Judgment and GRANTS the Plaintiff's Alternative Motion for Remand.

This case has an extensive procedural history. Ms. Barton ("Claimant") applied for DIB on March 29, 2002, alleging that she was disabled as of March 31, 1996, due to mental illness, depression, diabetes, celiac disease, high blood pressure, colitis, and vision problems. (Tr. 17, 92, 116). Her claim was denied initially, and upon reconsideration. (Tr. 30–34). After a hearing before an Administrative Law Judge, the Honorable Robert W. Young ("ALJ") on June 4, 2003, the ALJ denied Ms. Barton's claim and concluded in a decision dated October 31, 2003, ("1st ALJ decision") that she retained the residual functional capacity ("RFC") to perform a wide range of light exertional work "subject to additional limitations requiring a need to avoid concentrated exposure to dust, fumes or temperature extremes and an inability to engage in more than simple routine and low stress work." (Tr. 42). Based on her

RFC, the ALJ found that she was able to return to her past relevant work as a warehouse checker. (Tr. Id.) Alternatively, after receiving testimony from a vocational expert ("VE"), the ALJ found that there was work in significant numbers in the local and national economies that she could perform. Accordingly, the ALJ found she was not disabled. (Tr. 35–42).

On February 19, 2004, the Appeals Council granted Ms. Barton's request for review, vacated the "1st ALJ decision", and remanded the case for further administrative proceedings with specific directives. The Appeals Council's Order remanding the case is found in the administrative record at pages 43–46.

Another hearing was held before the Honorable Robert W. Young on September 3, 2004. In a decision dated March 8, 2005, ("2nd ALJ decision") he again denied Ms. Barton's claim for benefits, and found that she had not engaged in any substantial gainful activity since her alleged onset date. At step two of the sequential evaluation the ALJ found Ms. Barton was severely impaired by the following conditions: colitis, celiac disease, diabetes mellitus with nephropathy, hypertension, depressive disorder, and a psychotic disorder.[1] The ALJ then found that although these impairments were severe—i.e., they caused more than minimal limitations on Ms. Barton's ability to perform work activities—they did not meet or medically equal any of the Listings at step three. (Tr. 17, 22). Pursuant to 20 CFR § 404.1520a, the ALJ found Ms. Barton had:

"Mild" Restriction in Activities of Daily Living;

"Moderate" difficulties in maintaining social functioning;

her memory and concentration were "satisfactory"; and she had experienced "one or two" episodes of decompensation. (Tr. 18).

At step four, the ALJ found Ms. Barton retained the following RFC: "[s]he could not sit for more than six hours; lift more than twenty pounds occasionally, ten pounds frequently; no more than occasionally climb stairs, balance, kneel, crawl, crouch, and stoop; and she was unable to perform more than simple, routine unskilled tasks." (Tr. 19)

The ALJ also found that based on her RFC, Claimant was unable to perform any of her PRW. (Tr. 22). After receiving testimony from a VE, the ALJ concluded that work existed in the national and local economies in significant numbers which Ms. Barton could perform.[2] Accordingly, the ALJ found she was not disabled. (Tr. 16–23).

On June 16, 2005, three months after the ALJ issued his decision, Claimant's then counsel[3] submitted additional evidence to the Appeals Council. These materials included two assessments dated May 24, 2005, which were completed by Claimant's treating physician, Dr. Madhu Sachdev. (Tr. 518–531). This evidence was accepted by the Appeals Council and made a part of the administrative record. (Tr. 11). On February 10, 2006, the Appeals Council denied Ms. Barton's request for review,

---

1. There is an unexplained discrepancy in the ALJ's decision. In the Evaluation of the Evidence portion of his decision, the ALJ found Claimant's celiac disease was a severe impairment. However in the enumerated findings portion, this impairment was not included. (Cf. 17, See "FOF" 3, Tr. 22). While I am not remanding this case based on this error alone, on remand this discrepancy should be explained.

2. The ALJ found that work existed for Claimant as a cafeteria worker, sorter/inspector and order clerk. (Tr. 22).

3. Claimant was previously represented by Attorney David Batzer. (Tr. 16, 519).

making her case ready for judicial review. (Tr. 7–11). Ms. Barton raises several arguments in support of her contention that the ALJ's decision is not supported by substantial evidence.

■ Citing this Court's decision in *Hawker v. Barnhart*, 235 F.Supp.2d 445,(D.Md.2002)[4], Ms. Barton argues that the Appeals Council's failure to explain how the new evidence was weighed and evaluated requires a remand[5]. *See* Plaintiff's Memorandum, pp. 25–27.

The Commissioner argues that this Court is required to review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Agency's findings. The Commissioner contends that the decision in *Hawker* is at odds with Fourth Circuit precedent, *Wilkins v. Secretary*, 953 F.2d 93 (4th Cir.1991). The Commissioner argues that in line with *Wilkins* this Court can, and should, evaluate the new evidence to determine whether the ALJ's decision is supported by substantial evidence.

"New evidence" is evidence which is not duplicative or cumulative. Evidence is "material" if there is a reasonable possibility that it would have changed the outcome. *Wilkins*, 953 F.2d at 96. When the Appeals Council incorporates new evidence into the record, the Court must review the record as a whole including the new evidence. *Id.* To the extent that my decision in *Hawker* is read as having departed from the standards for review of new evidence set forth in *Wilkins* by mandating that a remand must always follow whenever the Appeals Council fails to explain how it

evaluated new evidence presented to it, regardless of whether this evidence could have changed the outcome when considered with the evidence produced before the ALJ, it should no longer be followed, as *Wilkins* is controlling.

The new evidence in this case consists of Exhibits AC–1 through AC–4. (Tr. 11, 519–523). AC–1 is a Memorandum submitted by Claimant's previous counsel, David Batzer, which stated essentially that the ALJ failed to follow the Appeals Council directives, failed to follow the special technique in 20 CFR § 404.1520a in assessing the extent of Ms. Barton's mental limitations, and ignored the physical limitations resulting from her colitis. (Tr. 519–523). Exhibit AC–2 is a set of 2 documents completed by Claimant's treating physician, Dr. Madhu Sachdev. The first is a document titled "Medical opinion Re: Ability to Perform Work Related Activities (Mental)". The second document is a 2 page assessment from the Doctor regarding Claimant's physical limitations.(526–527). Exhibits AC–3 and AC–4 both are correspondence from Attorney Batzer addressed to the Appeals Council regarding an extension of time and his fee agreement. (Tr. 528–529).

■ This appeal focuses primarily on Exhibit AC–2. The Commissioner argues that this new evidence does not require a remand. The Commissioner contends that the most recent assessment submitted by Dr. Sachdev is contradicted by the doctor's previous opinions and other evidence of record[6]. I am not persuaded by the Commissioner's arguments.

---

4. Claimant also cites Magistrate Judge Gesner's unpublished decision in *Spruell v. Barnhart*, BPG 05–2447.

5. With respect to the new evidence submitted, the Appeals Council stated only as follows: "in looking at your case we considered the reasons you disagree with the decision and

the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 8).

6. The Commissioner argues that the Claimant's ability to run with her dog is indicative

The ALJ rejected both of the previous assessments received from Dr. Sachdev. However, the ALJ rejected them on the basis that Dr. Sachdev's opinions were not relevant to the time period in question[7]. After review of the new evidence from Dr. Sachdev, there is no question that the doctor's opinions contained therein specifically relate to the time period at issue in this case since the newly submitted assessments—dated May 25, 2005—state, *inter alia,* "that the restrictions described [therein] have **existed at least since March 29, 2001.**" (Tr. 525, 527)(emphasis added). The doctor also provided a detailed assessment of the Claimant's mental limitations. He found that in 19 of 25 areas described therein, Ms. Barton was unable to meet competitive standards. He also found that she could only lift 5 lbs. occasionally, and that due to peripheral neuropathy, uncontrolled hypertension, and diabetes mellitus, Ms. Barton's standing and walking were affected as well as her ability to feel, push, and pull. He concluded that she could only occasionally perform postural activities such as crouching, crawling, etc. Finally, Dr. Sachdev stated that due to pain and shortness of breath, Ms. Barton had environmental restrictions. (Tr. 524–528).

Therefore assuming that the ALJ properly rejected the previous assessments from Dr. Sachdev on the basis that they were not related to the time period in question, then the newly submitted assessments do not conflict with the old assessments, as the Commissioner contends, as they deal with a different period of time in Claimant's medical history.

■ Even were I to assume, *arguendo,* that the Commissioner is correct and that the new evidence does not warrant a remand, I am still not able to say the ALJ's decision is supported by substantial evidence. After careful review of the entire record that was before the ALJ, I agree with Claimant's argument that the ALJ failed properly to analyze all of the medical evidence regarding her physical and mental impairments at steps two, four, and five of the sequential evaluation. *See* Plaintiff's Memorandum, pp. 23–24, 32–35.

In determining the Claimant's RFC the ALJ rejected Dr. Sachdev's opinions, but he also rejected the only other RFC assessments contained in the record before him. The ALJ rejected Exhibits 8–F & 9–F[8], both of which were generated by the State Agency physician, and noted that there were "no other contemporaneous physical functional capacity assessments of limitation or subsequent assessments directed to the limited period of disability." (Tr. 20). Despite acknowledging the lack of any other medical evidence to support the finding regarding Ms. Barton's RFC, the ALJ stated—without citing what evidence supported his RFC assessment— that Ms. Barton retained the RFC to: [s]it for no more than six hours; lift no more than twenty pounds occasionally, and ten pounds frequently; no more than occasionally climb stairs, balance, kneel, crawl, crouch, and stoop; and she was unable to perform more than simple, routine unskilled tasks. (Tr. 19). This is improper. *See* SSR 96–8p (1996 WL 374184 **4,**7 (S.S.A.)) *See also Morales v. Apfel,* 225

---

of an ability to perform light work. However, the ALJ does not refer to any such activity in his decision.

7. The ALJ stated that one assessment appeared only to be "based on Claimant's recent medical status" and that the other documented limitations which were related to her condition only "after the date last insured." (Tr. 20).

8. Both of these state agency physicians signed one page "medical summary reports" and concluded that Claimant had no physical impairments affecting her ability to work. (Tr. 342, 343).

F.3d 310, 317–318 (3d Cir., 2000)(ALJ improperly substituted his own lay opinion for that of the treating physician's medical evidence).

The Commissioner argues that Claimant's testimony about her daily activities, her ability to run with her dog, and non-compliance with treatment are factors which support the ALJ's RFC determination and the ALJ's finding that she could perform light work. *See* Defendant's Memorandum, pp. 27–34. However, I am not able to say that the ALJ's decision is supported by substantial evidence. *See* FN. 6, *supra.*

According the Commissioner's own rules and regulations, one must be found to be disabled before non-compliance will be the basis to deny benefits. Clearly that is not the circumstance in this case, because the ALJ found that Claimant was not disabled. 20 CFR § 404.1530; SSR 82–59; *see also, Lozada v. Barnhart,* 331 F.Supp.2d 325, 340 (E.D.Pa.2004).

Furthermore, if the ALJ had doubts regarding the basis for Dr. Sachdev's earlier opinions—i.e., that they "appeared" to be based on only the recent medical status—the ALJ should have attempted to recontact the doctor. The controlling Regulation states relevantly: "We will seek additional evidence or clarification from your medical source **when the report from your medical source contains a conflict or ambiguity** that must be re-solved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 CFR § 404.1512(e) (emphasis added).

Finally, in the Evaluation of the Evidence portion of his decision, when discussing Claimant's mental RFC, the ALJ—referring to Exhibit 9F [9]—, stated only:

> "[R]egarding the claimant's diagnosed mental disorders prior to December 2001, one of the state agency reviewing medical consultants is noted to have opined that the claimant would be limited to the performance of simple, routine, unskilled work." (Tr. 20).

However, there is other pertinent evidence in the record—Exhibits 10–F & 11–F—that was not adequately discussed by the ALJ. Exhibit 10–F is a Mental Residual Functional Capacity Assessment ("MRFCA") form that stated, *inter alia,* that Claimant could "do routine, unskilled work **in a non-public setting**". (Tr. 346). Exhibit 11–F is a Psychiatric Review Technique Form ("PRTF") completed by the same unidentified doctor [10].

Due to this error, there is an unresolvable question whether the ALJ's RFC finding that Claimant had an inability to engage in more than "simple, routine, unskilled work" reflects all of the Claimant's mental limitations. (Tr. 22). As noted by

---

**9.** After careful review of the record, the undersigned has determined that this "medical summary record"—completed by a state agency non examining reviewing expert—consists of one page, and states: "can do routine unskilled work if not drinking heavily." (Tr. 343).

**10.** The ALJ may have made a passing reference to Exhibit 11–F in his decision, when he stated—"[T]hese findings are also noted to be generally in accord with the conclusions reached by a state agency reviewing psycholo-gist appearing in a Psychiatric Review Technique Form based on the evidence pertinent to the period between March 31, 1996 and December 31, 2001." (Tr. 18). However, due to the ALJ's failure to cite an exhibit, or provide an explanation of why some, but not all, of the limitations found therein were adopted by him, the undersigned is not able to determine whether this evidence was properly evaluated. *See* SSR 96–5p (1996 WL 374183, *2) (Opinions from any medical source on issues reserved to the Commissioner must never be ignored).

the Appeals Council when it remanded this case [11], Social Security Ruling("SSR") 85–15 applies and provides guidance for the ALJ's regarding the importance of thoroughness in the evaluation of a claimant's mental RFC on an individualized basis. *SSR 85–15* (1985 WL 56857 (S.S.A.))

After careful review of the record, including the transcript of the administrative hearing, it is evident that there are limitations described in Exhibits 10–F & 11–F that were not discussed by the ALJ in his decision, or in the hypothetical that the ALJ presented to the VE. The hypothetical presented to the VE was as follows:

> ALJ: "Okay. Assume we have we have an individual the same age, education, past work experience as the claimant. Also assume for the purpose of this hypothetical, let's assume the individual would be limited to a light exertional capacity. Should avoid concentrated exposure to dust, fumes, gases also temperature extremes. We have nonexertional limitations that would limit her to simple routine unskilled tasks. Any jobs such an individual could perform?" (Tr. 613).

**11.** The Appeals Council's Order of Remand, in relevant part, stated:
> ... "Under the authority of 20 CFR 404.977, the Appeals Council vacates the hearing decision and remands this case to an Administrative Law Judge for resolution of the following issues:
> ... [O]f note, the residual functional capacity does not contain any limitations related to the claimant's social functioning. **Additionally, the decision found she should "not engage in more than simple low-stress work" (page 6, paragraph 2). Social Security Ruling 85–15 explains that stress in a work environment is individually perceived and may include attendance, completion of certain tasks, interaction with supervisors, or interactions with peers. The decision does not explain what stressful circumstances may cause the claimant to decompensate."**

The mental RFC was described by the ALJ only as limiting Ms. Barton to "simple, routine, unskilled tasks". (Tr. 22, 613). The relatively broad unspecified nature of the description "simple and unskilled" does not adequately incorporate specific limitations. Furthermore, because the ALJ failed to discuss the State Agency expert's opinions that Ms. Barton was limited to work in a **nonpublic setting,** and that she had other moderate limitations [12], I am not able to say the ALJ's RFC is supported by substantial evidence. (Emphasis added). The Commissioner's own Ruling, in relevant, part states:

> "[R]FC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).... **The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."**

SSR 96–8p (1996 WL 374184 *4, *7 (S.S.A.))(emphasis added).

(Tr. 44–45)(emphasis added).

**12.** For example, in his hypothetical presented to the VE, the ALJ did not include a "moderate" limitation in ability to carry out detailed instructions; "moderate" limitation in ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; a "moderate" limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; a "moderate" limitation in her ability to perform at a consistent pace without an unreasonable number of rest periods; "moderate" limitation in ability to accept instructions and respond appropriately to criticism from supervisors; or "moderate" limitation in ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (Tr. 344–345, 613).

In other words, it is unknown whether a hypothetical individual with five "moderate" limitations, including a need for work in a **non-public setting** would be able to perform the work described. (Emphasis added). This error is not inconsequential. *See Wiederholt v. Barnhart,* 121 Fed. Appx. 833 (10th Cir.2005) (broad, unspecified nature of "simple" and "unskilled", did not adequately incorporate specific findings about mental limitations); *See also, Bailey v. Barnhart,* 473 F.Supp.2d 822, 840(N.D.Ill.2006) (hypothetical person with "moderate" limitation in adhering to a schedule or concentrating, understanding or handling instructions would be precluded from work); *See also, McMillan v. Barnhart,* 2006 WL 4050691, at *8 (N.D.Ill.)(an evaluation of the mental RFC at step four or five is properly considered in the context of the twenty mental activities presented on the "Mental Residual Functional Capacity Assessment" form).

There was no reference in the ALJ's decision and/or in his hypothetical(s) to the limitations found in Exhibit 10–F. This is improper since many, if not all, of the abilities in which Claimant was found to have moderate limitations are essential to unskilled work. *Masch v. Barnhart,* 406 F.Supp.2d 1038, 1054 (E.D.Wis.2005). The mental abilities required for unskilled work "include the abilities to understand, carry out, and remember simple instructions; **to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.** A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." SSR 85–15 (1985 WL 56857) (emphasis added) (S.S.A.).

In sum, it is unclear whether the jobs identified by the VE involved skills that were beyond Claimant's RFC [13]. Accordingly, I am not able to say the ALJ's finding at steps 4 and 5 are supported by substantial evidence. For the above reasons, the Commissioner's decision is reversed and the case is remanded for further proceedings in accordance with the foregoing Memorandum. A separate Order shall issue.

### ORDER

For the reasons stated in the foregoing Memorandum of same date, it is this 18th day of July, 2007 hereby **ORDERED:**

1. that Defendant's Motion for *En Banc* Consideration (Paper No. 22) and Defendant's Motion for Consolidation (Paper No. 23) are both **DENIED;**

2. that Defendant's Motion for Summary Judgment (Paper No. 21) is **DENIED;**

3. that Plaintiff's Motion for Summary Judgment or in the alternative, Motion for Remand (Paper No. 12), is **PARTIALLY GRANTED;**

4. that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** under the fourth sentence of 42 U.S.C. § 405(g) for the institution of further proceedings in accordance with the foregoing Memorandum;

5. that this Order constitutes a judgment for the purpose of seeking attorney's fees under either 42 U.S.C. § 406(b) or 28 U.S.C. § 2412(d)(1) (EAJA); and

6. that the Clerk is directed to **CLOSE** this case.

---

**13.** The ALJ found that Claimant could work as a cafeteria worker, an order clerk, and a sorter/inspector. (Tr. 21–22).