**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TIMOTHY C. HEINRITZ,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

        Defendant-Appellee.

No. 05-5208
(D.C. No. 04-CV-618-SAJ)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY** and **EBEL**, Circuit Judges, and **KANE**,[**] District Judge.

Plaintiff-appellant Timothy C. Heinritz appeals from the order entered by

the district court affirming the Social Security Commissioner's decision denying

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    The Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

his application for disability insurance benefits under the Social Security Act. Exercising jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we affirm.

**I.**

In a decision issued in August 2003, the administrative law judge (ALJ) denied plaintiff's application for benefits at step five of the five-step sequential evaluation process for determining disability, finding that: (1) plaintiff's "impairments of status post right hip replacement; right sensorineural hearing loss; and a generalized anxiety disorder . . . are severe impairments by Social Security definition," Aplt. App., Vol. 2 at 21; (2) plaintiff's impairments do not meet or equal any listed impairment under step three of the controlling regulations, *id.*; (3) plaintiff's "impairments limit him to unskilled light level work activity that does not require more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling; working in the presence of noise; or active interaction with the general public," *id.* at 23; (4) plaintiff does not retain the residual functional capacity (RFC) to perform the requirements of his past skilled work as a general manager, marketing director, and operations manager, *id.* at 20, 24; but (5) based on the hearing testimony of the vocational expert, there are multiple unskilled jobs in the regional and national economy that plaintiff can perform, and the available jobs include ticket taker, cafeteria attendant, cleaner, bench assembler, and addresser, *id.* at 24-25.

In July 2004, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. In September 2005, the magistrate judge, sitting by consent of the parties and by designation of the district court pursuant to 28 U.S.C. § 636(c), entered an order and a related judgment affirming the denial of plaintiff's application for disability benefits. This appeal followed.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal*, 331 F.3d at 760.

## II.

In this appeal, plaintiff claims that "[t]he State agency reviewing experts diagnosed him as having an organic mental disorder due to alcohol induced dementia, an affective disorder and a substance abuse disorder." Aplt. Opening Br. at 10. He further asserts that the ALJ committed reversible error by: (1) failing to properly consider and develop the administrative record; (2) failing to perform a proper step-two evaluation of his alleged impairments; (3) failing to

properly evaluate the opinions of Dr. Mallgren, one of his treating physicians; (4) failing to properly evaluate the credibility of his allegations regarding his impairments; and (5) failing to perform a proper step-five evaluation.

Plaintiff's allegations and medical history are set forth in detail in the ALJ's decision and the magistrate judge's order. In particular, we note that the magistrate judge's thorough and well-reasoned order contains a detailed summary of plaintiff's allegations, his medical history, and the administrative proceedings below, *see* Aplt. App., Vol. 1 at 18-25, and we will not repeat that summary here. Having carefully considered the extensive arguments that are set forth in plaintiff's appellate briefs, we are also convinced that the ALJ's denial of disability benefits is supported by substantial evidence in the administrative record. Consequently, we do not deem it necessary to address all of the arguments advanced by plaintiff in this appeal, and only briefly address the following points.

**A. Testimony of the Vocational Expert.**

Because there is substantial medical evidence in the record that contradicts the vocational expert's testimony, we reject plaintiff's argument that the ALJ committed reversible error by "fail[ing] to acknowledge the testimony of the VE that the marked limitation in [his] ability in the domain of concentration, persistence, or pace precluded competitive work." Aplt. Opening Br. at 23. While plaintiff is correct that the Psychiatric Review Technique form that was

prepared and reviewed by the "State agency experts" stated that plaintiff had a "marked degree of limitation" in maintaining concentration, persistence, or pace, *id.* at 21; *see also* Aplt. App., Vol. 2 at 316, these same experts also submitted a separate, and more specific, RFC assessment of plaintiff's ability to perform work-related mental activities. In the latter document, the state experts concluded that plaintiff was "Not Significantly Limited" with regard to seventeen of twenty specific mental activities associated with "Understanding And Memory," "Sustained Concentration And Persistence," "Social Interaction," and "Adaptation." *See* Aplt. App., Vol. 2 at 320-21. In particular, with regard to concentration and persistence, the state experts opined that plaintiff was not significantly limited with regard to "[t]he ability to carry out very short and simple instructions." *Id.* at 320.

In addition, while the state experts found that plaintiff was "Moderately Limited" with regard to his abilities to: (1) understand, remember, and carry out detailed instructions; and (2) interact appropriately with the general public, *id.* at 320-21, these limitations are not inconsistent with the ALJ's RFC determination, *id.* at 22, 23 (limiting plaintiff "to unskilled light level work activity that does not require . . . active interaction with the general public," and relying on opinion of consultative psychologist that plaintiff "could understand and remember simple instructions; could concentrate and persist on simple tasks; could interact on a

limited basis with the general public and/or coworkers; and could adapt to the demands of a simple work environment").

We also reject plaintiff's argument that the ALJ erred by "ignor[ing] the testimony of the vocational expert witness that [he] could not work with a Global Assessment of Function of 50 to 55." Aplt. Opening Br. at 23 (capitalization modified). To begin with, as the magistrate judge noted, "GAF scores are not considered absolute determiners of disability." Aplt. App., Vol. 1 at 28. More importantly, however, a GAF score of 51-60 indicates only that a person will have "moderate difficulty in social or occupational functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quotation omitted).[1] We are therefore not convinced, based on the medical and other evidence in the record before us, that a GAF score of 50-55 is necessarily inconsistent with the ALJ's determination that plaintiff retains the RFC to perform unskilled work. *See* 20 C.F.R. § 404.1568(a) (defining "[u]nskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"). In fact, although Dr. Kent, the consultative psychologist, assigned a GAF score of 50-55 to plaintiff, *see* Aplt. App., Vol. 2 at 243, Dr. Kent nonetheless concluded that plaintiff could: (1) "understand and remember simple to moderately complex [work] instructions"; (2) "concentrate and persist on

---

[1] By contrast, "[a] GAF score of 41-50 indicates . . . serious impairment in social, occupational, or school functioning." *Langley*, 373 F.3d at 1122 n.3.

simple to moderately complex [work] tasks"; and (3) "adapt to a simple to moderately demanding work environment," *id.* at 242-43.       In sum, like the magistrate judge, we "conclude[] that the ALJ's conclusion with regard to Plaintiff's mental functioning is based upon substantial evidence in the record." *Id.*, Vol. 1 at 29.  As a result, we "cannot say that the ALJ erred by failing to rely upon a specific GAF score attributable to Plaintiff."  *Id.* at 28-29.

**B.  Development of the Administrative Record.**

Plaintiff claims the ALJ erred by failing to order "further neuropsychological testing."  Aplt. Opening Br. at 25.  This argument is without merit.  As explained by the magistrate judge:

> Plaintiff specifically asserts that a "Hallstead-Reitan test" should have been administered to Plaintiff.  Plaintiff was referred for a Psychological Evaluation and did have some testing performed. [R. at 238].  As a result of that testing, the examiner noted that Plaintiff had some memory difficulties.  The examiner concluded that rehabilitation could assist Plaintiff and noted that "more extensive memory or neuropsychological testing may help to determine whether he is capable of understanding and remembering more than simple instructions on a day to day basis."  [R. at 242].  This examiner, which Plaintiff relies in part upon to suggest that the ALJ failed his duties, suggests that more testing could be ordered to determine if Plaintiff could retain *more information* or could *improve more*.  *The examiner did not state that such testing was necessary to determine Plaintiff's current impairments*.

Aplt. App., Vol. 1 at 29 (emphasis added).

## C. The ALJ's Step-Two Evaluation.

Plaintiff claims the ALJ failed to perform a proper evaluation at step two of the sequential evaluation process because: (1) "the experts of the State agency found that [he] suffered primarily from an organic mental disorder"; and (2) he "clearly has a medically determinable organic mental disorder and the ALJ's failure to find it constituted a severe impairment is erroneous." Aplt. Opening Br. at 29 (citing Aplt. App., Vol. 2 at 307; 20 C.F.R. § 404.1520; and SSR 96-3p at *2). We disagree. As noted by the magistrate judge:

> An ALJ is required to consider the limitations that a given impairment has on the claimant's abilities to work rather than the label given to a disease or ailment. For example, if a claimant has diabetes, the ALJ's focus is on the impairments that result from diabetes. In this case, the record reveals that the ALJ considered the mental impairments which were attributed to Plaintiff.

Aplt. App., Vol. 1 at 30.

## D. Dr. Mallgren.

Plaintiff claims the ALJ failed to properly evaluate the opinions of Dr. Mallgren, one of his treating physicians at the Grand Lake Mental Health Center. Plaintiff's treating physician argument is not supported by the record, and we agree with the following analysis of the magistrate judge:

> Plaintiff complains that the ALJ did not adequately address the records of Plaintiff's treating physicians at Grand Lake Mental Health. The ALJ first noted that the records by Dr. Mallgren were not consistent with the treatment records submitted from Grand Lake Mental Health. The ALJ observed that Plaintiff's records indicated gradual improvement. The ALJ therefore did not give controlling

-8-

weight to the opinion of Dr. Mallgren which is consistent with the requirements in assessing a treating physician's opinion.

Plaintiff additionally asserts that the ALJ failed to follow the remaining factors in analyzing the treating physician's opinion. The ALJ noted that Dr. Mallgren saw Plaintiff on two occasions in January and April 2003. The ALJ discussed the nature and extent of the relationship noting that Plaintiff was seen primarily by a different doctor, that Plaintiff was described as stable on medication and was released because he did not meet the criteria for treatment. The ALJ discussed the remaining medical evidence in the record and noted Dr. Mallgren's opinion was inconsistent with the treatment notes. The ALJ noted that much of Dr. Mallgren's opinion was based on Plaintiff's subjective comments rather than the treatment notes. The Court cannot conclude that the ALJ failed to evaluate and give reasons for giving little weight to the opinion of the treating physician.

*Id.* at 34-35.

### E. The ALJ's Credibility and Step-Five Determinations.

We agree with the magistrate judge that "the ALJ's [credibility] evaluation is supported by substantial evidence." *Id.* at 35. Specifically, we agree that the administrative record contains sufficient evidence to support the ALJ's "conclusion . . . that the symptoms experienced by the claimant are limiting but, when compared with the total evidence, not severe enough to preclude all types of work." *Id.*, Vol. 2 at 22; *see also id.* at 25 (finding that "claimant's testimony is . . . credible only to the extent consistent with a residual functional capacity for a wide range of light work").

We also reject plaintiff's argument that "the ALJ failed to perform a proper evaluation at step 5 of the sequential evaluation process." Aplt. Opening Br. at

45 (capitalization modified).  First, because we have concluded that the ALJ's step-five finding that plaintiff can perform certain unskilled light jobs is supported by substantial evidence in the record, we do not need to address plaintiff's claim that he should be "limited to sedentary work, [because then] he grids out." *Id.* (quotation omitted).  Second, as found by the magistrate judge, while "Plaintiff additionally assert[ed] that none of the hypotheticals [submitted to the vocational expert] included mental limitations caused by Plaintiff's organic brain impairment," Aplt. App., Vol. 1 at 36, plaintiff failed to adequately support this argument in the proceedings before the district court, *id.* (noting that plaintiff failed to "specify the limitations that should have been included").

Finally, we will not consider the arguments that plaintiff has made in this appeal in an attempt to demonstrate that "[t]he ALJ's own hypothetical precludes work for Claimant." Aplt. Opening Br. at 46.  Plaintiff failed to present the latter arguments to the district court, and there are no compelling reasons to excuse his waiver. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented [by a social security claimant] to the district court."); *Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (stating that "waiver principles developed in other litigation contexts are equally applicable to social security cases," and that "waiver may result from the disability claimant's failure to . . . preserve issues in the district court").

The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Circuit Judge