FILED
United States Court of Appeals
Tenth Circuit

July 29, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MICHAEL P. ATKINSON,

Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

No. 09-1369
(D.C. No. 1:08-CV-01773-CMA)
(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before **HOLMES**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

---

Michael P. Atkinson appeals from a district court order that affirmed the

Commissioner's denial of social-security disability-insurance benefits (DIB) and

supplemental-security income payments (SSIP). He argues that (1) the

administrative law judge's (ALJ's) determination of his residual functional

capacity (RFC) was flawed because it did not take into account all of his

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

moderate non-exertional limitations or his score on the Global Assessment of Functioning (GAF) scale; and (2) the ALJ erred in not fully crediting his stated symptoms and limitations. We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), and we affirm.

## BACKGROUND

In 2006, at the age of thirty, Mr. Atkinson applied for DIB and SSIP, stating he was homeless and could no longer work as a cook because of bipolar disorder, post-traumatic stress disorder, and seizures. He later expanded his medical issues to include knee problems.

Doctor Greg Finnoff examined Mr. Atkinson for the agency, and noted that in addition to mental-health issues, he also suffered from "an old right knee injury with an anterior cruciate ligament separation." Aplt. App., Vol. 1 at 149. Dr. Finnoff further noted that Mr. Atkinson's seizures had been controlled by Dilantin, but that he had been off the medication for several months. Dr. Finnoff concluded that Mr. Atkinson's only functional limitations would be caused by his seizure disorder, and would include driving, operating heavy machinery, and being in environments that are dangerous or present temperature extremes.

Psychiatrist Shirley Robbins also performed a consultative psychiatric examination, and concluded that Mr. Atkinson suffers from social-anxiety disorder, intermittent-explosive disorder, panic disorder, major depression, post-traumatic stress disorder, cannabis abuse, alcohol abuse in remission,

methamphetamine abuse in remission, a seizure disorder, narcissism, and possibly bipolar disorder. Dr. Robbins gave Mr. Atkinson a GAF score of 44.[1] But she did not explain how she calculated that number or what it meant in terms of his specific limitations.

Dr. Donald Glasco reviewed Mr. Atkinson's records and completed a mental RFC assessment. He concluded that Mr. Atkinson could not work closely with supervisors, coworkers or the general public, and could not perform work that is complex or that requires accuracy and attention to detail. But given those restrictions, Dr. Glasco opined that Mr. Atkinson could complete "a normal workday/workweek" without significant delays because of his medical conditions. *Id.* at 172.

While Mr. Atkinson's DIB and SSIP applications were pending, he injured his knee(s) while chasing a dog. An MRI of the left knee revealed tearing of the medial meniscus, joint effusion, a parameniscal cyst, and chondromalacia. Surgery was apparently suggested as a treatment option, but Mr. Atkinson could not afford it.

At a hearing before an ALJ, Mr. Atkinson testified that he attended high school through the tenth grade, he was currently working at a Sonic Drive-In as a cook "three to four" hours a day "depend[ing] on how long [he] [could] stand

---

[1] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quotation omitted).

with [his] knee," *id.* at 28, he could not afford his anti-seizure medicine, he was no longer homeless, he has problems dealing with supervisors and occasionally co-workers, and that several years prior he was shot in the back.

A vocational expert (VE) testified that a hypothetical claimant with Mr. Atkinson's age and education who was limited to light exertional work and "no unprotected heights, no moving machinery, no hazardous work areas, no dealing with the general public, occasional dealing with co-workers, [and] no complex tasks" could not perform Mr. Atkinson's past (and present) work. *Id.* at 40. The VE also testified that there were three jobs in the national economy that such a claimant could perform: assembler of small products; collator operator; and developer of automatic film. But when asked about job prospects if the hypothetical claimant's restrictions were expanded to preclude all contact with "co-workers or supervisors," the VE testified that there were no jobs available. *Id.* at 40-41.

The ALJ concluded that Mr. Atkinson was not disabled. In doing so, the ALJ reviewed his medical records and found that he suffered from degenerative changes of the knees, a seizure disorder, an affective disorder, and an anxiety related disorder. Because of these conditions, the ALJ formulated an RFC that limited Mr. Atkinson to light, non-complex work that does not involve unprotected heights, moving machinery, hazardous work areas, contact with the general public, or more than occasional contact with co-workers. The ALJ

-4-

declined to impose further restrictions, however, noting that Mr. Atkinson was not pursuing treatment for his seizures or mental-health conditions, and that despite Mr. Atkinson's testimony concerning his limited working hours at Sonic, his pay stubs showed he was actually working an average of thirty-five hours per week. As further noted by the ALJ, Mr. Atkinson's Sonic job was "far in excess of his determined [RFC]." *Id.* at 17. Nevertheless, the ALJ gave him "the greatest benefit of the doubt" and concluded that he could not work as a cook. *Id.* at 18. Finally, the ALJ relied on the VE's testimony and found that Mr. Atkinson's RFC left open other jobs in the national economy that he could perform.

## DISCUSSION

### I. Standards of Review

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotation omitted). But "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). Thus, "we may not displace the agency's choice between two fairly conflicting views, even though

-5-

the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quotation omitted). Finally, while "we will not reweigh the evidence or retry the case, we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (quotations omitted).

## II. RFC Determination

### A. Dr. Glasco

Mr. Atkinson argues that the ALJ's RFC determination is flawed because he failed to mention all of the moderate limitations found by Dr. Glasco. For instance, the ALJ did not mention that Dr. Glasco found moderate limitations in Mr. Atkinson's abilities "to maintain attention and concentration for extended periods" and "to complete a normal workday and workweek without interruptions from psychologically based symptoms." Aplt. App., Vol. 1 at 170-71. This argument fails for two reasons. First, Mr. Atkinson did not raise it in the district court, and we generally decline to consider arguments made for the first time on appeal. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994). Second, even if we were to consider the argument, the ALJ accepted Dr. Glasco's ultimate opinion that all of Mr. Atkinson's limitations would not preclude non-complex work. Therefore, the fact that the ALJ did not discuss every single limitation used by Dr. Glasco to reach his ultimate opinion is not problematic. *See Clifton*

-6-

*v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating that while an ALJ must consider all of the evidence in the record, nothing requires the discussion of every piece of evidence).

Mr. Atkinson also argues that the ALJ did not take into account Dr. Glasco's opinion that he could not work closely with supervisors. While the ALJ's written decision references Dr. Glasco's opinion only as it relates to co-workers, we conclude that the omission of "supervisors" is harmless. Specifically, the ALJ used both "co-workers" *and* "supervisors" when questioning the VE about the jobs the VE had identified in the national economy as being within the reach of a hypothetical claimant sharing Mr. Atkinson's RFC. Aplt. App., Vol. 1 at 40-41. Because the ALJ's decision relies on the VE's testimony, it adequately accounts for Dr. Glasco's opinion that Mr. Atkinson should not work closely with either co-workers or supervisors.[2]

---

[2]     Mr. Atkinson argues that the VE's testimony about jobs in the national economy matching his RFC was flawed because the hypothetical question posed to the VE did not include all of the moderate limitations that Dr. Glasco identified. But like the ALJ's written decision, the hypothetical posed to the VE tracked Dr. Glasco's ultimate conclusions about Mr. Atkinson's limitations and ability to do non-complex work. Further, the hypothetical included the environmental and machinery limitations identified by Dr. Finnoff. We conclude that the ALJ's hypothetical adequately reflected the "impairments and limitations that are borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (citation omitted).

B.  Dr. Robbins

Mr. Atkinson next contends that the ALJ failed to indicate how Dr. Robbins's opinions were factored into his RFC determination.  In the district court, this argument focused on the ALJ's failure to discuss the GAF score in his written decision.  To the extent Mr. Atkinson seeks on appeal to expand his argument beyond the GAF score, we decline to consider it.  *See Crow*, 40 F.3d at 324.

While a GAF score of 44 can indicate serious functional impairments in social, occupational or educational settings, *see Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007), nothing in Dr. Robbins's report indicates that the score undermines the ALJ's RFC determination or otherwise indicates an impairment that would seriously interfere with Mr. Atkinson's ability to work.  Indeed, Dr. Robbins offered no explanation as to how she calculated the score or how it impacted Mr. Atkinson's functional abilities.  By itself, a GAF score "is not essential to the RFC's accuracy."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).  It was enough that the ALJ discussed the other aspects of Dr. Robbins's report, and he gave no indication that he rejected any part of it.

III.  Credibility

Mr. Atkinson argues that the ALJ erred in not fully crediting his stated symptoms and limitations.  We disagree.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). While an ALJ must do more than simply "recite[ ] the general factors he considered," so long as "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," his determination must stand. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ found Mr. Atkinson's self-reported limitations less than credible for several reasons. First, Mr. Atkinson's testimony about the number of hours he was able to work conflicted with his pay stubs showing what he actually was working—and in a job that exceeded his RFC. Second, he was not taking any seizure medication or pursuing mental-health treatment. Although he claimed he could not afford it, he had in the past been able to afford at least the seizure medication, and he has provided no evidence that he "sought to obtain any low-cost medical treatment" or that he has "been denied medical care because of [his] financial condition." *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992); *cf. Threet v. Barnhart*, 353 F.3d 1185, 1191 n.7 (10th Cir. 2003) (indicating "that inability to pay may provide a justification for [the] claimant's failure to seek treatment" when there is evidence that the claimant sought and was

refused treatment).[3]  Indeed, Dr. Glasco noted that Mr. Atkinson's seizure disorder "was controlled when [he] attend[ed] [a] homeless clinic and [was] taking [his] med[ication]."  Aplt. App., Vol. 1 at 172.  Third, Mr. Atkinson reported that he injured his knee while chasing a dog.  Such an activity is inconsistent with a disabling knee condition, which he claimed began long before the chasing incident.

We conclude that substantial evidence supports the ALJ's credibility determination.

### CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Jerome A. Holmes
Circuit Judge

---

[3]     Although the district court cited Mr. Atkinson's admitted use of marijuana twice a week as refuting an inability to pay for medical treatment, the ALJ did not mention that evidence.  A court may not "create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).  The district court's mistake has no bearing on this appeal, however, as we "independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).