FILED
United States Court of Appeals
Tenth Circuit

August 27, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANTHONY JARAMILLO,

Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

Defendant - Appellee.

No. 13-2194
(D.C. No. 1:11-CV-00980-RB-RHS)
(D. N.M.)

---

**ORDER AND JUDGMENT***

---

Before **McHUGH**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

Anthony Jaramillo appeals from the district court's judgment affirming the

denial of his application for social security disability benefits. Exercising

jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, we reverse and remand

for further consideration by the agency.

---

\* After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.  Background

Mr. Jaramillo applied for disability benefits based on neck and back pain, depression, anxiety, a broken clavicle, and sleep apnea.  After his application was denied initially and upon reconsideration, he had a hearing before an administrative law judge (ALJ).  The ALJ found Mr. Jaramillo not disabled at the fifth and final step of the sequential evaluation used to assess social security claims.  *See* 20 C.F.R. § 404.1520(a)(4) (describing five-step process).  Specifically, the ALJ determined that despite several severe impairments that were not of listing-level severity (depression, post-traumatic stress disorder, sleep apnea, degenerative disc disease, and headaches), Mr. Jaramillo retained the residual functional capacity (RFC) to perform sedentary work but was "limited to simple, routine, repetitive and unskilled tasks" and had to avoid all exposure to direct sunlight.  Aplt. App., Vol. I at 18 (boldface omitted).  At the hearing, the ALJ asked a vocational expert (VE) whether there were any jobs someone with such an RFC could perform.  The VE identified three, on which the ALJ relied in concluding that Mr. Jaramillo was not disabled: "label cutter," "dowel inspector," and "stop attacher (sliding bottom of zippers in place, via machine)."  *Id.* at 25.  The Appeals Council denied review, and the district court affirmed.

## II.  The relevant medical evidence

Mr. Jaramillo's appeal focuses on the limitation to simple, routine, repetitive, and unskilled tasks in the ALJ's RFC and dispositive hypothetical to the VE, which

he claims was insufficient to encompass his mental limitations. He also takes issue with the ALJ's handling of the medical evidence related to his mental limitations. We will first review that medical evidence and the ALJ's comments on it before analyzing the issues.

Three different state-agency medical consultants provided opinions on Mr. Jaramillo's mental abilities. Two of those consultants examined Mr. Jaramillo, but the third did not.

In 2007, Dr. Louis Wynne, Ph.D., examined Mr. Jaramillo and opined that he had no more than a mild limitation in his ability to concentrate and persist at simple work tasks. Otherwise, Dr. Wynne found Mr. Jaramillo could read and understand basic instructions; could interact well with the general public; would have no difficulty interacting with co-workers or supervisors; and could adapt to workplace changes, recognize hazards, and manage his own benefit payments.

In 2009, psychiatrist Dr. Charles Mellon, M.D., examined Mr. Jaramillo and considered him moderately limited in his ability to (1) carry out instructions, (2) attend and concentrate, and (3) work without supervision. Dr. Mellon found Mr. Jaramillo not limited in any of the other mental activities listed on the examination form: understand and remember very short and simple or detailed or complex instructions; interact with the public, coworkers, and supervisors; adapt to changes in the workplace; be aware of normal hazards and react appropriately; and use public transportation or travel to unfamiliar places.

Shortly after Dr. Mellon's report, Dr. Scott Walker, M.D., reviewed the medical records (including the reports of Dr. Wynne and Dr. Mellon) and completed a Mental Residual Function Capacity Assessment (MRFCA). Dr. Walker did not examine Mr. Jaramillo. In Section I of the form, Dr. Walker checked boxes indicating moderate limitations in nine mental activities, seven of which Mr. Jaramillo emphasizes on appeal: (1) "maintain attention and concentration for extended periods"; (2) "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; (3) "sustain an ordinary routine without special supervision"; (4) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; (5) "accept instructions and respond appropriately to criticism from supervisors"; (6) "respond appropriately to changes in the work setting"; and (7) "set realistic goals or make plans independently of others." Aplt. App., Vol. II at 427-28. In Section III of the MRFCA, Dr. Walker wrote a short narrative, stating that Mr. Jaramillo "is focused on his physical condition/pain. Nevertheless, he can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id.* at 429.

The ALJ expressly discussed the findings of Dr. Mellon and Dr. Wynne, Aplt. App., Vol. I at 17, 20, then stated that the "State Agency medical consultants . . .

- 4 -

determined that . . . it did not appear there were any significant functional limitations

to prevent the claimant's full-time participation in the workforce," *id.* at 23. He then

essentially summarized Dr. Walker's Section III narrative comments and stated he

"concur[red] in their opinion [i.e., the opinions of the state agency medical

consultants] with respect to the claimant's mental health diagnoses and limitations,

for the reasons discussed in this decision." *Id.* A page later, in a summary

paragraph, he stated that he

> placed great weight on the opinions of Drs. Wynne and Mellon as it
> [sic] relates to claimant's limitations resulting from his mental health
> conditions. On the basis of their opinions I have limited claimant to
> simple, routine, repetitive, [unskilled[1]] tasks. I note that Dr. Wynne
> concluded that the claimant could read and understand basic written
> instructions and his concentration and ability to persist at simple work
> tasks was no more than mildly impaired.

*Id.* at 24.

### III. Discussion

### A. Standard of review

Our task is limited to determining whether the agency's "factual findings are

supported by substantial evidence and whether correct legal standards were applied."

*Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (internal quotation marks omitted). We cannot "reweigh the

---

[1]  The ALJ actually said "simple" again, but obviously meant unskilled, as in his formal RFC finding.

evidence" or "substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted).

## B.      Whether the ALJ improperly ignored evidence

Before turning to Mr. Jaramillo's primary argument, we will address his subsidiary contention that the ALJ improperly picked and chose portions of the medical evidence to support his RFC finding. Mr. Jaramillo claims the ALJ erred in this respect by (1) not incorporating Dr. Mellon's moderate limitations into his RFC finding, (2) not assigning any weight to Dr. Walker's opinion, and (3) not discussing or explaining why he did not adopt four of the moderate limitations Dr. Walker found in Section I of the MRFCA.

It is not entirely clear whether the ALJ improperly considered only portions of the evidence favorable to the determination, as Mr. Jaramillo suggests. To the extent he did, he erred. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). Given that Dr. Mellon's examination was more recent (by two years) than Dr. Wynne's, and that Dr. Walker did not examine Mr. Jaramillo, the moderate limitations Dr. Mellon found in three mental activities are significant. *See Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004) (concluding that report indicating claimant had no pain and normal gait was substantial evidence supporting ALJ's RFC finding because it was "more recent" than records generated one month after injury); 20 C.F.R. § 404.1527(c)(1)

- 6 -

(stating that the agency generally "give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [him]"); *cf. Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 544 (10th Cir. 1987) (ALJ not justified in discounting treating physician's new opinion that claimant's condition was deteriorating, thus changing physician's prior opinion that claimant would be able to return to work).[2]

But with the sole exception of Dr. Walker's Section I limitations, which we will discuss separately below, we read the restriction to simple, routine, repetitive, and unskilled tasks as the ALJ's attempt to incorporate the limitations found by all three consultants rather than as a violation of *Hardman*. The ALJ expressly placed great weight on the opinions of Dr. Mellon and Dr. Wynne, summarized Dr. Walker's Section III narrative, and concurred in the consultants' opinions. Thus, our ensuing analysis turns on whether the limitation to simple, routine, repetitive, and unskilled tasks included in the dispositive hypothetical to the VE adequately accounts for the consultants' opinions about Mr. Jaramillo's mental impairments.

## C.    Expressing mental limitations in the RFC finding

Mr. Jaramillo's primary argument is that, by limiting him to simple, routine, repetitive, and unskilled tasks, the ALJ violated the requirement of Social Security

---

[2]    Mr. Jaramillo also claims that although Dr. Wynne's opinion was after the alleged onset date of his disability, it predates the period for which he can collect benefits, implying that the opinion's relevance is of diminished importance. Given our disposition of this case, we need not address this issue.

Ruling (SSR) 96-8p that "nonexertional capacity [which includes mental limitations] must be expressed in terms of work-related functions" or "[w]ork-related mental activities." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). He points out that in *Chapo v. Astrue*, we explained that "mental functions . . . 'are not skills but, rather, general prerequisites for most work at any skill level.'" 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (quoting *Wayland v. Chater*, Nos. 95-7029 & 95-7059, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) (unpublished)). He further notes a similar statement in an unpublished case, *Groberg v. Astrue*, 505 F. App'x 763, 770 (10th Cir. 2012), that "[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental impairments."

Mr. Jaramillo also relies on a provision of another SSR that recognizes a distinction between mental functions and skill level:

> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job. . . . Any impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.

SSR 85-15, 1985 WL 56857, at *6. He further notes that, according to the Social Security Administration's Program Operations Manual System (POMS), "[m]oderately limited" means "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS DI 24510.063 B.2.

(boldface omitted).[3] And he points to two published cases from this circuit remanding where the ALJ failed to explain the omission of moderate limitations from an RFC finding. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (rejecting argument that moderate impairment means an ability to function satisfactorily, as formerly defined on the MRFCA); *see also Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (relying on *Haga* and remanding where RFC failed to reflect moderate limitations identified on an MRFCA, including "maintaining attention and concentration for an extended period of time" (internal quotation marks omitted)).

We agree with Mr. Jaramillo, at least with respect to Dr. Mellon. Under SSR 85-15, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4 (1985).[4] These abilities are examples of work-related mental functions. *See* SSR 96-8p, 1996 WL 374184, at *6. Therefore,

---

[3] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). This court "defer[s] to the POMS provisions unless we determine they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

[4] "Unskilled work" is also described by regulation as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). However, this description adds nothing relevant to our analysis.

a limitation to unskilled work or, as the ALJ phrased it here, "unskilled tasks," could be used as shorthand for the specific mental abilities described in SSR 85-15, and that is how we read the ALJ's decision in this case.

Mr. Jaramillo does not contend (nor does it appear) that Dr. Wynne's mild limitation in the ability to concentrate and persist at simple tasks exceeds the basic mental demands of unskilled work as described in SSR 85-15. And Dr. Walker's narrative largely tracks the passage quoted from SSR 85-15. The only portion that does not track the Ruling is his finding that Mr. Jaramillo could concentrate for two-hour periods. But that finding conforms with POMS DI 25020.010 B.2.a., which states that any job, including unskilled work, requires "[t]he ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)," and with POMS DI 25020.010 B.3.d., which lists the ability to "maintain attention for extended periods of 2-hour segments (concentration is not critical)" among "Mental Abilities Critical For Performing Unskilled Work." Hence, although this court has noted a distinction between skill level and mental functions, *see, e.g.*, *Chapo*, 682 F.3d at 1290 n.3, the distinction does not apply here with respect to Dr. Wynne's mild limitation or the mental capacities set out in Dr. Walker's Section III narrative.

However, the distinction is relevant to Dr. Mellon's opinion, on which the ALJ expressly placed great weight. None of the basic mental abilities of unskilled work described in SSR 85-15 captures any of the three *moderate* limitations Dr. Mellon

found (carry out instructions, attend and concentrate, and work without supervision), nor do the additional limitations to simple, routine, and repetitive tasks. "[A] moderate impairment is not the same as no impairment at all." *Haga*, 482 F.3d at 1208. Instead, it "supports the conclusion that the individual's capacity to perform the activity is impaired," POMS DI 24510.063 B.2. (boldface omitted), and therefore must be related with sufficient precision in a dispositive hypothetical to a VE and in an RFC finding. The limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments Dr. Mellon found. Rather, the ALJ was required to express those impairments "in terms of work-related functions" or "[w]ork-related mental activities," SSR 96-8p, 1996 WL 374184, at *6. As a result, the ALJ's reliance on the jobs the VE identified in response to the hypothetical was not supported by substantial evidence. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (explaining that a hypothetical inquiry to a VE "must include all (and only) those impairments borne out by the evidentiary record"); *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." (brackets and internal quotation marks omitted)).

We are unpersuaded by the Commissioner's arguments to the contrary. She first claims that the limitation to simple, repetitive, routine, and unskilled tasks

accounted for the functional limitations all three consultants found. *See* Appellee's

Br. at 21. But the analysis related to this conclusion concerns only Dr. Walker's

Section III narrative. *See id.* at 21-23. As shown above, Dr. Mellon found more

severe limitations than Dr. Walker did in his Section III narrative. Moreover, the

unpublished cases the Commissioner cites[5] for the proposition that moderate levels of

impairment do not preclude non-complex work are unpersuasive given the facts of

this case and in light of our statements in published cases that moderate limitations

must be accounted for in an RFC finding and, consequently, in a dispositive

hypothetical to a VE. *See Frantz*, 509 F.3d at 1302-03; *Haga*, 482 F.3d at 1208.

We also are unpersuaded by two other unpublished cases the Commissioner

cites for her conclusion that a limitation to unskilled work is adequate to encompass a

variety of moderate mental limitations. *See Wendelin v. Astrue*, 366 F. App'x 899,

904 (10th Cir. 2010); *Heinritz v. Barnhart*, 191 F. App'x 718, 721-22 (10th

Cir. 2006). Neither of those cases examined the specific mental abilities that can

properly be inferred from a limitation to "unskilled work" under SSR 85-15. And we

have reached the opposite conclusion in at least one other unpublished case where

SSR 85-15 also was not considered. *See Wiederholt v. Barnhart*, 121 F. App'x 833,

839 (10th Cir. 2005) (holding that limitation to "simple, unskilled job tasks" was

---

[5]     Those cases are: *Atkinson v. Astrue*, 389 F. App'x 804 (10th Cir. 2010), *Sayles v. Astrue*, 275 F. App'x 790 (10th Cir. 2008), and *Foy v. Barnhart*, 139 F. App'x 39 (10th Cir. 2005).

insufficient to incorporate "moderate difficulties maintaining concentration, persistence, or pace").

The Commissioner cites to a portion of SSR 85-15 for the proposition that "[a] claimant who has 'a *substantial* loss of ability to meet any of these basic work-related activities [to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting]' may be unable to perform even unskilled work." Appellee's Br. at 24 (emphasis added) (quoting SSR 85-15, 1985 WL 56857, at *4). But the framing of this proposition is somewhat misleading because the Commissioner has paraphrased the last part of the material quoted from SSR 85-15, which focuses on using the Medical-Vocational Guidelines (or "grids," as they are often referred to), 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a framework for a disability determination when solely nonexertional impairments are involved. *See* SSR 85-15, 1985 WL 56857, at *1.[6] The full statement reads: "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base[,]" which "would justify a finding of disability." SSR 85-15, 1985 WL 56857, at *4.

---

[6] Even though Mr. Jaramillo did not have solely nonexertional impairments (he was also limited to sedentary work), SSR 85-15 is still useful for its discussion of the mental requirements for unskilled work.

But it does not automatically follow from this proposition that only a substantial loss of ability is relevant to a claimant's ability to work. Because the ALJ used the grids as a framework in this case, he was required to "identify, and establish [Mr. Jaramillo's] ability to perform, some specific occupation(s) which—however few in themselves—encompass a significant number of available jobs." *Evans*, 55 F.3d at 532. Accordingly, the passage from SSR 85-15 that the Commissioner relies on does not justify omitting moderate limitations from an RFC finding or from the dispositive hypothetical to a VE.

The Commissioner also notes that in *Chapo*, the claimant had more numerous and more severe impairments. But the relevant point of *Chapo* is its distinction between skills and mental functions, a distinction that we consider applicable to the moderate limitations Dr. Mellon found. The Commissioner further claims that *Groberg* is distinguishable because the limitation found insufficient to address mental impairments was to "simple work" or "unskilled jobs," *see* 505 F. App'x at 770, whereas the ALJ here limited Mr. Jaramillo to jobs that were not only simple and unskilled but also "routine" and "repetitive." This is a meaningless distinction because neither "routine" nor "repetitive" is logically connected to any of the moderate limitations that Dr. Mellon found.

### D. Dr. Walker's Section I limitations

Mr. Jaramillo also claims that (1) the ALJ erred in failing to discuss four of the moderate limitations Dr. Walker found in Section I of the MRFCA; (2) Dr. Walker

failed to elaborate in Section III on all of the moderate limitations he found in Section I, as required by POMS DI 24510.063; and (3) Dr. Walker's Section III narrative contradicts some of the moderate limitations he found in Section I. *See* Aplt. Opening Br. at 14 n.10, 21-22.  Although he argued to the district court that the ALJ erred in failing to include the Section I moderate limitations in his RFC, he did not advance his POMS-based arguments or contend that Dr. Walker's Section III narrative contradicted some of the moderate limitations he marked in Section I. "Absent compelling reasons, we do not consider arguments that were not presented to the district court."  *Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994); *see also Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721-22 (10th Cir. 1993) (stating that we will not consider a new theory on appeal, even if it falls under the same general category as an argument raised below).  Given that we are remanding, we see no compelling reason to reach the forfeited issues.  And because the forfeited issues may have some bearing on whether the ALJ was required to include any of Dr. Walker's Section I limitations in his RFC finding, we decline to reach that preserved issue.  On remand, the ALJ should consider these issues, including whether any of the claimed deficiencies in Dr. Walker's Section III narrative affect the ALJ's reliance on it.[7]

---

[7] On remand, the ALJ should also consider the policies described in the following POMS provisions:  POMS DI 25020.010 B.1. (regarding an adjudicator's use of Section I and Section III to assess RFC); POMS DI 24510.060 B.4.a. & B.4.b. (regarding a consultant's obligation to describe the Section I limitations in Section III); and POMS DI 24510.063 B.2. (same).

## IV.  Conclusion

The judgment of the district court is reversed, and this case is remanded with instructions to remand the matter to the Commissioner for further consideration in accordance with the foregoing analysis.

Entered for the Court


Carolyn B. McHugh
Circuit Judge