FILED
United States Court of Appeals
Tenth Circuit

December 10, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TERESA KEARNS,

     Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

     Defendant - Appellee.

No. 15-6078
(D.C. No. 5:14-CV-00394-M)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **GORSUCH**, and **McHUGH**, Circuit Judges.
_____

The Commissioner of the Social Security Administration denied Teresa

Kearns's application for disability insurance benefits (DIB). The district court

affirmed the denial, and Ms. Kearns appeals. Exercising jurisdiction under 28 U.S.C.

§ 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I.	Background

When she was thirty-eight years old, Ms. Kearns applied for DIB based on

post-traumatic stress disorder (PTSD), bipolar disorder, severe anxiety and

depression, and panic attacks.  The Commissioner denied her application for benefits,

both on initial consideration and reconsideration.  Ms. Kearns then appeared at a

hearing before an administrative law judge (ALJ) in September 2012, where she was

represented by counsel.  Ms. Kearns testified, as did a vocational expert (VE).  The

ALJ concluded that Ms. Kearns was not disabled during the relevant time period.

In reaching this conclusion, the ALJ applied the familiar five-step sequential

evaluation process used to assess social security claims, *see* 20 C.F.R.

§ 404.1520(a)(4):

- At step one, the ALJ determined Ms. Kearns had not engaged in substantial gainful activity from her alleged onset date (August 2, 2010) through her date last insured (June 30, 2012).

- At step two, the ALJ determined Ms. Kearns had several severe impairments: status post ankle fracture, obesity, bipolar I disorder, PTSD, and borderline personality.

- At step three, the ALJ considered Ms. Kearns's back and ankle pain, obesity, and mental impairments and determined she did not have an impairment (or combination of impairments) that met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, so as to be per se disabling.

- At step four, the ALJ determined Ms. Kearns had the residual functional capacity (RFC) to perform a limited range of light work:

  > [T]he claimant was able to occasionally stoop, kneel, and crouch.  The claimant is able to interact appropriately on a superficial work basis with coworkers and supervisors, but cannot interact with the general public.  The claimant was able to understand, remember, and follow

simple routine instructions and had concentration capability necessary to perform unskilled work with the specific vocational profile level of two.

Aplt. App., Vol. I at 40. The ALJ also found that Ms. Kearns was not able to perform her past relevant work as a home healthcare aide, personal-care attendant, cashier/checker, teacher aide, habilitation specialist, or cook helper.

- At step five, the ALJ considered Ms. Kearns's age (then forty years old), high school education, work experience, and RFC and found that she could perform jobs that existed in significant numbers in the national economy— including the jobs of night cleaner, packing-line worker, and small-products assembler. Therefore, Ms. Kearns was not disabled within the meaning of the Social Security Act and was not entitled to benefits.

The Appeals Council denied Ms. Kearns's request for review, and the district court affirmed, adopting the magistrate judge's report and recommendation.

Ms. Kearns now brings this timely appeal.

## II. Discussion

Ms. Kearns asserts the ALJ erred in four ways: (1) the RFC and the hypothetical question posed to the VE were inadequate because they did not account for work-related mental limitations, and besides the jobs suggested by the VE involve detailed work and thus do not fit the hypothetical question; (2) the ALJ did not discuss the low Global Assessment of Functioning (GAF) scores that Ms. Kearns was assigned throughout her treatment or the weight he gave those scores; (3) the ALJ gave significant weight to an agency doctor's opinion that had become stale, without analyzing it in the context of the entire evidence; and (4) the ALJ's credibility analysis was flawed.

3

As explained below, Ms. Kearns failed to preserve the first and fourth issues for appeal. For the second and third issues, our task is limited to determining whether substantial evidence supports the agency's factual findings and whether the agency applied the correct legal standards. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *Id.* (internal quotation marks omitted).

**A. Mental Limitations and Unskilled Work**

We begin with Ms. Kearns's argument that the RFC and the hypothetical question posed to the VE were deficient because a limitation to "unskilled work" does not account for her work-related mental limitations—namely, her bipolar I disorder, PTSD, and borderline personality, which were identified as severe impairments at step two. Ms. Kearns conflates the RFC's reference to her ability to "follow simple routine instructions" with the limitation to "unskilled work," Aplt. App., Vol. I at 40, and inaccurately characterizes the RFC as a limitation to "simple work," *e.g.*, Aplt. Principal Br. at 6, 9. Nevertheless, we understand her point to be that an ALJ cannot speak solely in terms of skill level in his RFC and hypothetical question to the VE because "if [the claimant's] mental impairments are affecting her, it will not matter how much skill is required in her specific job—her mental impairments will prevent any work," *id.* at 7.

4

We agree with the Commissioner that Ms. Kearns waived this argument because it was absent from her initial brief to the district court and first surfaced in her objections to the magistrate judge's report and recommendation. "In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).[1] Of course, an argument that was never raised before the district court is also waived. *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1280 (10th Cir. 2003). This is the case with Ms. Kearns's newly presented argument that the jobs suggested by the VE do not fit the hypothetical question because they involve detailed work.

---

[1] Ms. Kearns attempts to avert waiver through two alternative contentions, neither of which has merit. *See* Aplt. Reply Br. at 1–3. First, she asserts this issue was encompassed within her argument to the district court that the RFC did not contain sufficiently specific terms. *See* Aplt. App., Vol. III at 591–92. But there, Ms. Kearns critiqued the ALJ's use of the word "superficial" in describing her "ability to interact appropriately on a superficial work basis with coworkers and supervisors"—an entirely separate issue from an ALJ's ability or inability to adequately address a claimant's mental impairments through a limitation to unskilled work. Second, Ms. Kearns argues it was temporally impossible to present this issue in the initial brief to the district court because her position stems from our unpublished opinion in *Jaramillo v. Colvin*, 576 F. App'x 870 (10th Cir. 2014), which was released shortly after she filed that initial brief. But the citations in her appellate briefs date back to 1996, demonstrating that *Jaramillo* was not the first word on this issue. *E.g.*, *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012); *Wayland v. Chater*, 76 F.3d 394 (10th Cir. 1996) (unpublished table decision). The same is true for Ms. Kearns's parallel argument that the hypothetical question posed to the VE was deficient, an issue we also discussed in *Chapo*, 682 F.3d at 1290 & n.3. And Ms. Kearns again cites decades-old cases in support of her position. *E.g.*, *Evans v. Chater*, 55 F.3d 530 (10th Cir. 1995); *Hargis v. Sullivan*, 945 F.2d 1482 (10th Cir. 1991).

**B. GAF Scores**

We turn next to Ms. Kearns's argument that the ALJ did not discuss or weigh certain low GAF scores in his RFC assessment, and that these scores are at odds with the final determination on Ms. Kearns's ability to work:

- a score of 50 during outpatient treatment at Mental Health Services of Southern Oklahoma on April 6, 2011, Aplt. App., Vol. III at 507;

- a score of 25 upon admission to Carl Albert Mental Health Center on April 12, 2012, and a past score of 45 noted on the admission form, *id.* at 554; and

- a score of 30 upon admission to Griffin Memorial Hospital on June 5, 2012, *id.* at 568.

Ms. Kearns does not mention two other GAF scores she received: (1) a score of 75-80 during a consultative examination by psychiatrist Adonis Al-Botros, M.D., on January 31, 2011, *see id.*, Vol. II at 376, which is recounted in the ALJ's analysis, *see id.*, Vol. I at 41; and (2) a score of 52 upon release from Griffin Memorial Hospital on July 24, 2012 (up from 30 at intake), *see id.*, Vol. III at 571.

Our analysis necessarily begins with a brief explanation of GAF scores and what they signify. "The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). Its purpose is to allow clinicians to plan treatment, measure its

6

impact, and predict the outcome. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000).[2]

It is true that the ALJ did not expressly recite or reconcile Ms. Kearns's lower GAF scores, but that omission does not constitute error or take away from the substantial evidence supporting the ALJ's decision. While "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (internal quotation marks omitted). An ALJ's failure to conduct a comparative analysis and weigh conflicting GAF evidence does not mandate reversal. *Keyes-Zachary*, 695 F.3d at 1164. "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

In any event, it is obvious the ALJ considered the medical records that contained the GAF scores. At step four, he provided details on Ms. Kearns's outpatient treatment at Mental Health Services of Southern Oklahoma in 2011, as well as her inpatient care at Carl Albert and at Griffin Memorial Hospital in 2012—details that paraphrased those treatment records. *See* Aplt. App., Vol. I at 41–42. The GAF scores were only one component of those records, and the ALJ's discussion

---

[2] In the most recent edition of the manual, the American Psychiatric Association dropped the GAF scale "for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

7

of the records accurately described the overarching evidence of Ms. Kearns's improved mental state when she was compliant with her prescribed medications, her stable condition upon release from treatment, and the "positive future projection" for her mental health, *id.* at 42. Substantial evidence supports the ALJ's decision, and his failure to specifically discuss all of the GAF scores was not fatal.

## C. Agency Doctor's Opinion

Ms. Kearns also faults the ALJ for giving significant weight to the "stale" opinion of an agency doctor without analyzing it in the context of the entire medical evidence, which shows a decline in mental health in 2012. We deduce that she critiques the ALJ's reliance on the Psychiatric Review Technique (PRT) and Mental Residual Functional Capacity Assessment (MRFCA) performed by Joan Holloway, Ph.D., a non-examining state-agency psychologist.[3]

Here too we discern no error. The ALJ followed the mandate in *Keyes-Zachary*: "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions."

---

[3] In Section I of the MRFCA ("Summary Conclusions"), Dr. Holloway checked boxes indicating that Ms. Kearns was "[m]arkedly [l]imited" in "[t]he ability to understand and remember detailed instructions," "[t]he ability to carry out detailed instructions," and "[t]he ability to interact appropriately with the general public." Aplt. App., Vol. II at 392–93. She found no significant limitations in the remaining categories. In Section III ("Functional Capacity Assessment"), Dr. Holloway explained that Ms. Kearns "can perform simple tasks with routine supervision," "can relate to supervisors and peers on a superficial work basis," "cannot relate to the general public," and "can adapt to a work situation." *Id.* at 394. A second non-examining state-agency psychologist, Sharon Taber, Ph.D., affirmed the findings and assessments in the MRFCA, as well as the PRT, on reconsideration.

8

695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii)).

In addition to the opinion by Dr. Holloway, which was affirmed by Dr. Taber on

reconsideration, the ALJ considered:

- a March 23, 2011, case analysis by a state-agency physician, Janet G. Rodgers, M.D., finding no evidence of severe physical impairments, which was affirmed in an August 15, 2011, case analysis by a second state-agency physician, Luther Woodcock, M.D. (which the ALJ gave "strong weight and consideration"), Aplt. App., Vol. I at 44;

- three unidentified checklist forms dated July 13, 2010, November 5, 2010, and February 17, 2011, which were completed in connection with an application for social services from the Seminole Nation of Oklahoma (which the ALJ gave "minimal weight or consideration"), *id.* at 44–45;

- an April 14, 2011, letter from Don Bruce Chesler, M.D., which Ms. Kearns procured to defend against felony-assault charges for striking a police officer (which the ALJ gave "minimal weight or consideration"), *id.* at 45; and

- a September 13, 2010, "third party adult function report" completed by Ms. Kearns's father, which the ALJ deemed to be of questionable accuracy and "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case," *id.*

The ALJ's discussion of this opinion evidence was preceded by a thorough

recitation of the medical evidence, including records documenting panic attacks in

2010; the examination by Dr. Al-Botros on January 31, 2011; regular visits to Public

Indian Health Clinics in 2011; outpatient care with Mental Health Services of

Southern Oklahoma in 2011; emergency treatment and inpatient care at Carl Albert in

April and May 2012; and inpatient care at Griffin Memorial Hospital in June and July

2012. *See id.* at 40–43.

9

Not only did the ALJ examine the medical opinions in the context of Ms. Kearns's medical history, he also devoted extensive attention to the 2012 incidents—when Ms. Kearns was admitted to Carl Albert after taking too many pills within a short period and to Griffin Memorial Hospital following an overdose. In particular, he outlined the progress she made during treatment. When Ms. Kearns left Carl Albert, for instance, she "was stabilized on medications with reported improvement"; she had "attended and interacted well in her group sessions"; she "was alert and oriented with intact memory, normal concentration, and intact judgment" upon discharge; "she was sleeping well with good appetite [and] compliant upon her medications without any side effects"; and "she was utilizing effective coping skills." *Id.* at 42. Similarly, at Griffin Memorial Hospital, she "stabilized and improved upon her modified medications" and was "discharged as stable" with a mental health treatment plan. *Id.*

The ALJ carefully considered all of the medical evidence in formulating an RFC that addressed Ms. Kearns's mental impairments. Just because his assessment was similar to the medical opinions of Drs. Holloway and Taber does not mean that it was based solely on stale evidence. Substantial evidence supports the ALJ's decision.

### D. Credibility Analysis

The final argument is that the ALJ did not perform a proper credibility analysis in rejecting Ms. Kearns's subjective complaints of pain and limitation because he used boilerplate language and did not analyze the objective medical evidence. We do

10

not reach the merits of this argument because it was not properly preserved for appeal.

To preserve an issue for appellate review, a party must object to the magistrate judge's report and recommendation in a way "that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Although Ms. Kearns complained about the ALJ's credibility analysis in her opening brief to the district court, she did not make a specific objection to the magistrate judge's subsequent finding that the ALJ's credibility determination was "well supported by the record," Aplt. App., Vol. III at 615. Indeed, she ignored this issue entirely. She therefore waived appellate review of this determination under this court's firm waiver rule. *See Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 n.1 (10th Cir. 2008) (deeming issue waived where appellant failed to raise it in his objection to the magistrate judge's report and recommendation).

## III.  Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

11